**UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT L. HOLBROOK,** | : |
| | : |
| **Plaintiff,** | : |
| | : CIVIL NO. 3:CV-03-0033 |
| v. | : |
| | : (CHIEF JUDGE VANASKIE) |
| **SCOTT WALTERS, ET AL.,** | : |
| | : |
| **Defendants.** | : |

## M E M O R A N D U M

**I.        Introduction**

Presently before the Court is Plaintiff's Motion to Compel production of documents responsive to his June 13, 2005, Request for Production of Documents. (Dkt. Entry 50.) Plaintiff challenges Defendants' objections to requests 4, 12, 13 and 14.[1]  For the reasons that follow, Plaintiff's motion to compel will be denied.

**II.       Relevant Background and Procedural History**

On January 6, 2003, Plaintiff Robert E. Holbrook, an inmate formerly confined at

---

[1] A complete copy of the disputed discovery requests were not filed by Plaintiff in conjunction with his present motion. Defendants, however, produced a copy in connection with their opposition materials. See Dkt. Entry 61-2, Exhibits to Defendants' Brief in Opposition to Plaintiff's Motion to Compel Discovery, Exhibit A, Defendants' Response to Plaintiff's Third Request for Production of Documents.

the State Correctional Institution (SCI)-Huntingdon, Huntingdon, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983.  Holbrook claims that while at SCI-Huntingdon he was placed in Administrative Custody  ("AC") in anticipation of a separation transfer to a Long Term Segregation Unit ("LTSU") after being identified as a security threat and an anti-white extremist.  Holbrook claims these designations were manufactured by defendant Walters in retaliation for Holbrook's pursuit of institutional grievances and complaints and his religious affiliations. (Dkt. Entries 1, 2, and 38.)  The remaining Defendants are alleged to have failed to redress Walters' retaliatory actions once alerted to them.

On February 24, 2004, I granted Defendants' motion to dismiss Holbrook's Due Process claim challenging his AC placement.  (See Dkt. Entry 25.)  Plaintiff's claim of retaliation, which was not challenged by Defendants in their motion, is the sole surviving claim.

**III.**         **Discussion**

Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial."  Hickman v. Taylor, 329 U.S. 495, 501 (1947).  The polestar of discovery is relevance.  Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  "[A]ll relevant material is discoverable unless an

applicable evidentiary privilege is asserted.  The presumption that such matter is discoverable, however, is defeasible."   Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000).

Fed. R. Civ. P. Rule 37 allows a party who has received evasive or incomplete discovery responses to seek a Court order compelling disclosure or discovery of the materials sought.  See Fed. R. Civ. P. 37(a).  The moving party must demonstrate the relevance of the information sought.

### Request Number 4

Produce the DOC internal policy, not DC-801, governing the handling and documentation of information from confidential informants.  This includes:

(a)  Procedures to be employed in handling Confidential Informants.
(b)  The documentation methods employed.
(c)  The storage and retrival [sic] of the CSI Documents.
(d)  The reliability standards.
(e)  The tracking of CSIs institution to institution.

(See Dkt. Entry 61-2, Exhibit A.)

Defendants object to the release of this internal policy on the basis of relevance and privilege.  (Id.)  First, as to the matter of relevance, Defendants claim no "confidential informants" were used in the decision to place Holbrook in Administrative Custody ("AC") and thus the internal policy is not relevant.  They cite to Defendant Williamson's Answers to Plaintiff's First Set of Interrogatories, Interrogatory 5, as supportive of this assertion.  (Id.)  Holbrook claims that Defendant Walters' responses to interrogatories contradict Williamson's

statement. (See Dkt. Entry 51, Memorandum in Support of Motion to Compel, Exhibit A.) In response to Plaintiff's interrogatories, all framed with the premise that a confidential source of information ("CSI") was received by Walters in June 2002, Walters responds that he received information from inmates and staff when recommending Holbrook's placement in AC status. Walters objected to giving Holbrook the names of inmates who provided information "as the release of such information would likely result in retaliation against these inmates by Plaintiff or other inmates associated with Plaintiff." (Id.) When asked whether "this source of confidential information" was reliable in the past, Walters responded affirmatively. Defendants address Holbrook's argument by admitting that the information provided to Walters came from both staff and inmates. (Dkt. Entry 61-1, fn. 1.) They further clarify that the inmates who provided the information "were not, and are not, considered 'confidential informants' under the Department's security policy." (Id.) Defendants Williamson's and Walters' interrogatories do not appear to be in conflict. Walters indicated that the sources of information in this case have been reliable. Walters never indicated that the involved inmates were considered "confidential informants" under the DOC's policy.

  In any event, Defendants have carried their burden of showing that the documents in question are privileged. Secretary Beard contends that the disclosure of procedures for handling CSIs would create uncertainty and hesitation on the part of inmates to operate as CSIs, thereby depriving security staff of a valuable source of information. (See

-4-

Dkt. Entry 61-2, Exhibit D, Declaration of DOC Secretary Beard, Ph.D.)  In a prison setting, which is comprised of individuals "who have been unable to conduct themselves properly in a free society," the risks of "violence or intimidation directed at either other inmates or staff" are real.  Ponte v. Real, 471 U.S. 491, 495, 497 (1985).  Disclosure of the policies sought by Holbrook would provide insight into matters affecting the lives and security of those within the prison's walls.  Whatever relevance such information may have in this case is far outweighed by the potential for harm that could come from its disclosure.  Accordingly, Plaintiff is not entitled to the information sought in Request #4.

**Requests 12 through 14**.

> 12.     Produce SCI-Huntingdon Incoming Review Committee report and all documentation related to Plaintiff's reception to SCI-Huntingdon on April 6, 2000.
>
> 13.     Produce Defendant Lovett's initial review or staffing of Plaintiff upon his placement on B-Unit at SCI-Huntingdon on April 6, 2000.
>
> 14.     Produce Plaintiff's DC-311A and DC-312A Authorized Visitors and Supplementary Visitors forms submitted at SCI-Huntingdon between April 2000 and May 2003.

Defendants contend that Plaintiff was given the opportunity to review the identified documents on May 6, 2005.  Holbrook contends that on that date he was "not permitted to review his DC-15 file."  (Dkt. Entry 51.)  Instead he claims he was "only permitted to review a Document List Defendants counsel provided the prisons record office.  This

document list did not contained the documents Plaintiff is requesting access to." (Id. at p. 13; Exhibit C.)  Defendants confirm that Holbrook was given access to the various files and folders which included the requested documents on May 6, 2005.  To that end they produced the Declaration of Diana Thomas, SCI-Huntingdon's Grievance Coordinator.  (See Dkt. Entry 61-2, Exhibit E.)  Thomas' declaration significantly contradicts Holbrook's assertion that he was only permitted to review a "document list" in May 2005.  According to Thomas, after Holbrook reviewed Defendants' document production, he flagged 230 pages he wished photocopied at his expense.  (Id.)  Evidence that he paid the charge for copying the documents has been supplied.  Holbrook has not denied that fact.  There is thus no doubt that Holbrook's review consisted of more than a simple "document list."  Under these circumstances, Defendants do not have any obligation to produce the records again.

       An appropriate Order shall follow.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

**UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT E. HOLBROOK,** | : |
| | : |
| **Plaintiff,** | : |
| | : **CIVIL NO. 3:CV-03-0033** |
| v. | : |
| | : **(CHIEF JUDGE VANASKIE)** |
| **SCOTT WALTERS, ET AL.,** | : |
| | : |
| **Defendants.** | : |

**O R D E R**

      **AND NOW**, this **21st DAY of FEBRUARY**, **2006**, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT** Plaintiff's Motion to Compel Discovery (Dkt. Entry 50) is **DENIED**.

                                             **s/ Thomas I. Vanaskie**
                                             Thomas I. Vanaskie, Chief Judge
                                             Middle District of Pennsylvania